UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | | |
|---|---|---|
| ALMIRA E. KINTNER | ) | No. CV-07-3048-CI |
| Plaintiff, | ) | |
| | ) | ORDER DENYING PLAINTIFF'S |
| v. | ) | MOTION FOR SUMMARY JUDGMENT |
| | ) | AND GRANTING DEFENDANT'S |
| MICHAEL J. ASTRUE, Commissioner | ) | MOTION FOR SUMMARY JUDGMENT |
| of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

BEFORE THE COURT are cross-Motions for Summary Judgment (Ct. Rec. 15, 18).  Attorney D. James Tree represents Plaintiff Almira Kintner (Plaintiff); Special Assistant United States Attorney Joanne Dantonio represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. (Ct. Rec. 8.)  After reviewing the administrative record and briefs filed by the parties, the court **DENIES** Plaintiff's Motion for Summary Judgment, and directs entry of judgment for Defendant.

**JURISDICTION**

On January 15, 2002, Plaintiff protectively filed for disability insurance benefits (DIB) and Social Security Income (SSI) benefits. (Tr. 183.)  She initially alleged disability due to heart and lung problems and diabetes (Tr. 66), with an onset date of July 15, 2001.  (Tr. 49.)  In her request for reconsideration, she alleged additional impairments of seizures, memory loss, problems with concentration, severe fatigue and migraines.  (Tr. 75.) Benefits were denied initially and on reconsideration.  (Tr. 30,

34.)  Plaintiff requested a hearing before an administrative law judge (ALJ).  A hearing was held on March 12, 2003, at which Plaintiff and her mother-in-law Rosetta Kintner testified.  ALJ Dethloff denied benefits on April 24, 2003.  (Tr. 15-19.)  The matter was appealed to the Appeals Council and to the United States District Court for the Eastern District of Washington.  Based on a stipulation of the parties, the district court remanded the matter to the Commissioner for additional evidence and proceedings.  (Tr. 233-34.)

A second ALJ hearing was held on December 13, 2005, before ALJ Mary Reed.  (Tr. 400.)  Plaintiff, who was represented by counsel; medical expert W. Scott Mabee, Ph.D.; and vocational expert Deborah LaPoint testified.  (*Id.*)  Lay witness statements describing their observations of Plaintiff's seizures were submitted to the Commissioner.  (Tr. 97-102.)  The ALJ denied benefits and the Appeals Council denied review. (Tr. 210-21.)  The instant matter is before this court pursuant to 42 U.S.C. § 405(g).

## STATEMENT OF THE CASE

The facts of the case are set forth in detail in the transcript of proceedings, and are briefly summarized here.  At the time of the first hearing, Plaintiff was 36 years old and had an eleventh-grade education.  (Tr. 200.)  She reported that she was married, lived with her spouse, and had no children.  (*Id.*)  She was independent as to her activities of daily living, and reported being able to drive, make meals, and do housework.  (Tr. 262-64, 409.)  She testified that she watched television and played hand-held video games.  (Tr. 202.)  Although she testified at the first hearing

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 2

that she last drove in September 2002, at the second hearing, she stated she had not had a driver's license since 2000 and did not drive. (Tr. 198, 424, 430.) She had a car accident in September 2002 unrelated to seizures. (Tr. 199, 430.) She had past work experience as a kitchen cleaner and home health aide. (Tr. 432.) At the first hearing, she testified she could not work because of her diabetes and seizures. (Tr. 199.) At the second hearing, she testified she could not work due to seizures, her heart and mental disorder. (Tr. 419-420.)

**ADMINISTRATIVE DECISION**

At step one, ALJ Reed found Plaintiff had not engaged in substantial gainful activity during the relevant time. (Tr. 223.) At step two, she found Plaintiff had the severe impairment of a seizure disorder which related back to her alleged onset date, and the severe impairment of depression after August 2004. At step three, she determined these impairments did not meet or medically equal one of the listed impairments in 20 C.F.R., Appendix 1, Subpart P, Regulations No. 4 (Listings). (*Id.*) The ALJ found Plaintiff's allegations regarding symptoms and limitations were not totally credible. (Tr. 226-228.) At step four, she determined before August 2004, Plaintiff had a Residual Functional Capacity (RFC) for medium work, but could not work around unprotected hazards and heights; after August 2004, Plaintiff had slight and moderate limitations due to mental impairment. (Tr. 225-26.)

At step four, the ALJ found Plaintiff could perform her past relevant work as a home attendant and kitchen helper prior to her date of last insured; but after August 2004, her RFC precluded past

relevant work.    (Tr. 229-30.)    Proceeding to step five, the ALJ found Plaintiff could perform other jobs in the national economy and, therefore, was not under a "disability" as defined by the Social Security Act.    (Tr. 231.)

### STANDARD OF REVIEW

In *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), the court set out the standard of review:

> A district court's order upholding the Commissioner's denial of benefits is reviewed *de novo*. *Harman v. Apfel*, 211 F.3d 1172, 1174 (9th Cir. 2000). The decision of the Commissioner may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id.* at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).
>
> The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, although deference is owed to a reasonable construction of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).

### SEQUENTIAL PROCESS

Also in *Edlund*, 253 F.3d at 1156-1157, the court set out the requirements necessary to establish disability:

> Under the Social Security Act, individuals who are "under a disability" are eligible to receive benefits. 42 U.S.C. § 423(a)(1)(D). A "disability" is defined as "any medically determinable physical or mental impairment" which prevents one from engaging "in any substantial gainful activity" and is expected to result in death or last "for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Such an impairment must result

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 4

from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).   The Act also provides that a claimant will be eligible for benefits only if his impairments "are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. § 423(d)(2)(A).  Thus, the definition of disability consists of both medical and vocational components.

In evaluating whether a claimant suffers from a disability, an ALJ must apply a five-step sequential inquiry addressing both components of the definition, until a question is answered affirmatively or negatively in such a way that an ultimate determination can be made. 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f).   "The claimant bears the burden of proving that [s]he is disabled." *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).   This requires the presentation of "complete and detailed objective medical reports of h[is] condition from licensed medical professionals." *Id.* (citing 20 C.F.R. §§ 404.1512(a)-(b), 404.1513(d)).

It is the role of the trier of fact, not this court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400.  If evidence supports more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).  If there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or non-disability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 5

**ISSUES**

The question is whether the ALJ's decision is supported by substantial evidence and free of legal error. Plaintiff argues the ALJ erred when she: (1) improperly rejected treating and examining physicians' opinions; (2) found she could do past relevant work; (3) presented an incomplete hypothetical question to the vocational expert; (4) failed to consider lay testimony properly. (Ct. Rec. 16 at 12.)

**DISCUSSION**

**A.   Treating and Examining Physician Opinions**

In a disability proceeding, it is the role of the ALJ to resolve conflicts in medical evidence. A treating physician's opinion is given special weight because of his familiarity with the claimant and her physical condition. *See Fair v. Bowen*, 885 F.2d 597, 604-05 (9th Cir. 1989). If a treating or examining physician's opinion is not contradicted, it can be rejected only with "clear and convincing" reasons. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If contradicted, the ALJ may reject the opinion if he states specific, legitimate reasons that are supported by substantial evidence. *See Flaten v. Secretary of Health and Human Serv.*, 44 F.3d 1453, 1463 (9th Cir. 1995); *Fair*, 885 F.2d at 605. Furthermore, a treating physician's opinion "on the ultimate issue of disability" must itself be credited if uncontroverted and supported by medically accepted diagnostic techniques unless it is rejected with "clear and convincing" reasons. *Holohan v. Massanari*, 246 F.3d 1195, 1202-03 (9th Cir. 2001).

To meet this burden, the ALJ can set out a detailed and

thorough summary of the facts and conflicting clinical evidence, state her interpretation of the evidence, and make findings. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). Historically, the courts have recognized conflicting medical evidence, the absence of regular medical treatment during the alleged period of disability, and the lack of medical support for doctors' reports based substantially on a claimant's subjective complaints of pain as specific, legitimate reasons for disregarding the treating physician's opinion. *Flaten*, 44 F.3d at 1463-64; *Fair*, 885 F.2d at 604. The ALJ is not required to accept the opinion of a treating or examining physician if that opinion is brief, conclusory and inadequately supported by clinical findings. *Id.* Further, a plaintiff's credibility is an appropriate factor to consider when evaluating medical evidence. *See Webb v. Barnhart*, 433 F.3d 683, 688 (9th Cir. 2005). Disability cannot be established on a claimant's own statement of symptoms alone. *See* 20 C.F.R. §§ 404.1508, 416.908. A treating or examining physician's opinion is appropriately rejected if based primarily on a claimant's unreliable self-report. *Flaten*, 44 F.3d at 1463-64; *Fair*, 885 F.2d at 604.

Here, the ALJ found Plaintiff's statements regarding her impairments were not persuasive, and gave numerous examples of inconsistent statements regarding her seizures and depression given to physicians, emergency room doctors, mental health providers and examining doctors, and referenced objective medical evidence in the record and reports of inconsistency in taking seizure medication. The ALJ found the record in its entirety significantly discredited

Plaintiff's claims regarding the severity of her seizures. (Tr. 224, 226-28, 229.) The ALJ's credibility findings have not been challenged; they are detailed, clear and convincing and supported by substantial evidence. *Thomas*, 278 F.3d at 958-959; *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991) (en banc). If the ALJ's credibility findings are supported by substantial evidence in the record, the court may not engage in second-guessing. *See Morgan*, 169 F.3d at 600.

Courts have upheld an ALJ's decision to reject the opinion of an examining physician based in part on the testimony of a non-examining medical advisor. *Lester*, 81 F.3d at 831. The analysis and opinion of an expert selected by an ALJ may be helpful in his adjudication, and the court should not second guess the ALJ's resolution of conflicting medical testimony. *Andrews,* 53 F.3d at 1041, citing *Magallanes,* 881 F.2d 747, 753 (9th Cir. 1989). Further, testimony of a medical expert may serve as substantial evidence when supported by other evidence in the record. *Id.*

Plaintiff argues the opinions of treating physician Dr. Martinez and examining psychologist Dr. Toews were improperly disregarded, and it was error for the ALJ to rely on medical expert testimony. (Ct. Rec. 16 at 15, Ct. Rec. 20 at 4.) The evidence before the court indicates Dr. Martinez treated Plaintiff from September 2000 to March 2003. (Tr. 111-142, 161-87.) In a form questionnaire dated March 11, 2003, Dr. Martinez was asked if work on a regular and continuous basis would cause Plaintiff's condition to deteriorate, to which she responded "[n]ot necessarily but most likely unable to work," because of absenteeism four or more days per

month due to migraines and anxiety. (Tr. 144.)  The ALJ gave the statements on this form little weight because they were based on Plaintiff's unreliable self-report, the fact that Plaintiff had worked in the past with these conditions, and because the opinion was conclusory with little explanation.  As found by the ALJ, Dr. Martinez's report did not include the type of objective findings that would support a determination of total disability. (Tr. 229.)

The ALJ's reasons are clear and convincing and fully supported by the record.  Specifically, on the questionnaire relied upon by Plaintiff in her argument that her treating physician found her disabled, Dr. Martinez stated that objective evidence supporting her diagnoses was "very slim."  (Tr. 143.)  The record contains an EEG, CT head scan, chest imaging and ultrasound reports ordered by Dr. Martinez between 2000 and 2001, all of which revealed no abnormalities.  (Tr. 12, 136, 137, 138, 139, 142.)  A CAT scan given in September 2002, after Plaintiff's car accident, showed no intercranial problems.  (Tr. 153.)

After the case was remanded to the Commissioner in September 2004, Plaintiff's treating physician was Scott Reinmuth, M.D.  (Tr. 322.)  Dr. Reinmuth's clinical notes indicate Plaintiff reported "generally infrequent" migraines and seizures as "usually none." She reported not knowing what her blood sugar levels were and was not taking prescribed medicine for diabetes.  (Id.)  In February 2005, Dr. Reinmuth's notes indicate Plaintiff had not had a seizure in over a year, she was not filling her prescriptions and reported feeling better and able to function. (Tr. 324.)  This was confirmed by Dr. Zhang, examining neurologist, in June 2005, who found no

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 9

evidence of seizures, and recommended followup to explain her "history of spells." (Tr. 328.)  In August 2005, however, Plaintiff reported to Dr. Reinmuth that she could not afford medication and was having seizures every month.  (Tr. 371.)  These inconsistencies in medical evidence from other treating and examining physicians support the ALJ's rejection of Dr. Martinez's brief and conclusory opinions.

The ALJ gave "clear and convincing" reasons supported by the record to reject Dr. Martinez's opinion.  Given that the record and the ALJ's decision include many examples of Plaintiff's inconsistent self-report, and the objective medical evidence does not show abnormalities, the ALJ did not err in her rejection of Dr. Martinez's opinion that Plaintiff could not work.

Plaintiff claims the ALJ improperly rejected limitations included in a psychological evaluation form completed by Jay Toews, Ed.D.  (Ct. Rec. 16 at 16.)  Dr. Toews interviewed Plaintiff on October 17, 2005, shortly before she overdosed on phenobarbital. (Tr. 334, 347.)  In his narrative, Dr. Toews summarized Plaintiff's self-report of low blood sugar, unexplained fainting episodes, and a history of depression over five to six years.  (Tr. 335.)  This report of depression contrasted significantly with Plaintiff's report to psychologist Sandy Birldebough, Ph.D., in November 2004, that her first symptoms of depression started just two months prior to her meeting with Dr. Birldebough.  (Tr. 300.)  After summarizing numerous inconsistencies in Plaintiff's self-report and results of objective testing that indicated symptom embellishment, Dr. Toews concluded:

[T]he clinical profile is invalid and not technically interpretable. Characteristics of the Validity Profile are suggestive of deliberate attempts to exaggerate psychopathology and to deny feelings of well-being and psychological integrity. Individuals who have similar Validity Profiles are often seen as individuals that are seeking some secondary gain. Malingering cannot be ruled out.

(Tr. 340.) The ALJ found the contents of Dr. Toews narrative did not support the limitations included in the checklist form attached to the report, and specifically, Dr. Toews did not explain moderate limitations assessed in Plaintiff's "attendance, pace and ability to complete a normal work week." (Tr. 228.) The ALJ specifically declined to accept this limitation, reasoning: "It was noted that she appeared to be drugged and lethargic for the evaluation. However, other records do not reflect this presentation." (*Id.*) The ALJ also noted that Plaintiff reported a broad variety of daily activities, and that elsewhere in the record, Plaintiff was vague about her depression symptoms, and that treating physician Dr. Reinmuth reported Plaintiff's depressive disorder improved after her overdose. (*Id.*)

The ALJ properly considered the record in its entirety, and gave specific and legitimate reasons for excluding "moderate" limitations in "attendance, pace and ability to complete a normal work week" found on the two page check-off form accompanying the doctor's narrative report. (Tr. 344-45.) *See Crane v. Shalala*, 76 F.3d 251, 254 (9th Cir. 1996); *Social Security Ruling* (*SSR*) 96-8p and *SSR* 96-5p. Contrary to Plaintiff's argument, the ALJ provided specific, legitimate reasons, including reference to Dr. Toews' own report of the objective psychological testing results which showed

1  exaggeration of symptoms, and numerous inconsistencies in the record
2  that illustrated the unreliability of Plaintiff's self-report. (Tr.
3  228.) Because the record rationally supports the ALJ's specific and
4  legitimate reasons for giving little weight to these limitations,
5  her findings regarding Dr. Toews' opinions are conclusive. *Sprague,*
6  812 F.2d at 1229-1230.  The ALJ did not err in relying on the
7  medical expert's interpretation of Dr. Toews' objective testing
8  because his opinions were consistent with the record in its
9  entirety.

10 **B.  Lay Witness Statements**

11     Plaintiff argues the ALJ improperly rejected statements from
12 lay witnesses regarding her seizures. (Ct. Rec. 16 at 18; Tr. 97-
13 102.)  She specifically cites testimony from her mother-in-law
14 Rosette Kintner, that she had six to ten seizures a month, and each
15 seizure puts her out for at least eight hours. (Tr. 208.)  Lay
16 witness testimony as to a claimant's symptoms or how an impairment
17 affects ability to work is competent evidence and must be considered
18 by the ALJ.  If lay testimony is rejected, the ALJ "'must give
19 reasons that are germane to each witness.'" *Nguyen v. Chater*, 100
20 F.3d 1462, 1467 (9th Cir. 1996), citing *Dodrill v. Shalala*, 12 F.3d
21 915, 919 (9th Cir. 1993).  The ALJ considered the statements
22 submitted by Plaintiff and gave little weight to the accounts for
23 reasons relevant to the witness.  She found the frequency of the
24 seizures was not indicated by some of the witnesses, and the
25 statements did not document in detail the nature of seizures
26 observed.  The ALJ also found that because of Rosetta Kintner's
27 close relationship with Plaintiff, she could not be considered a
28

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 12

"disinterested" objective observer of her daughter-in-law's limitations. (Tr. 229.)  This is a valid reason for discounting lay testimony.  *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006).  The ALJ further found that, "[m]ost importantly, significant weight cannot be given to the witnesses' testimony because it, like the claimant's testimony, is simply not consistent with the preponderance of the opinions and observations by medical doctors in this case." (*Id.*)  This finding is adequate to reject lay testimony and is supported by the record.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005).  As discussed above, at various times in the record, Plaintiff reported infrequent to no seizures.  In February 2005, Plaintiff reported to her treating physician that she had not had a seizure in over a year, and could function with moderate depression.  Her medication compliance was inconsistent based on pharmacy records. (Tr. 324.)  In July 2005, examining neurologist Dr. Zhang questioned whether Plaintiff actually had seizures, since no objective medical tests revealed abnormalities to explain the alleged symptoms. (Tr. 327-28.)  Other imaging reports indicated no abnormalities to support the severity of seizures described by lay witness statements.  The ALJ clearly considered the lay witness statements and did not erroneously disregard them. See *Nguyen*, 100 F.3d at 1467.

C.   **Step Four and Five**

The Commissioner concedes error at step four of the sequential evaluation.  However, because the ALJ proceeded to step five, an erroneous finding that Plaintiff can do past relevant work is harmless, as long as the RFC and step five evaluation are legally

sufficient and based on substantial evidence. *See Stout v. Commissioner, Social Security Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006).

Here, the ALJ found Plaintiff had the following RFC:

> [C]laimant prior to her date of last insured and until August 2004, had the residual functional capacity to perform the full range of medium work except that she could not work around unprotected hazards and heights. <u>Since August 2004</u>, the claimant has additional moderate mental limitations in her ability to work in coordination with or proximity to others without being distracted by them and get along with co-workers and peers although she can engage in minimal interaction with others; interact appropriately with the general public although she can have minimal contact with the public; and accept instruction and respond appropriately to criticism from supervisors due to her low self-esteem and avoidant behavior. The claimant would also have slight limitations in her ability to: remember locations and work-like procedures; understand, remember and carry out short and detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance and be punctual; sustain an ordinary routine without special supervision; make simple work related decisions; complete a normal work day or workweek; perform at a consistent pace; ask questions or request assistance; maintain socially appropriate behaviors; adhere to basic standards of neatness and cleanliness; respond appropriately to changes in the work setting; be aware of normal hazards and take appropriate precautions; travel in unfamiliar places or use public transportation; and set realistic goals or make plans independently of others.

(Tr. 225-26.) (Emphasis added.)

Based on testimony from a vocational expert, she concluded Plaintiff could work as an industrial cleaner and unskilled housekeeper. (Tr. 231, 434-35.) Plaintiff argues step five is not based on substantial evidence because the ALJ's hypothetical to the vocational expert did not include all of her restrictions. (Ct. Rec. 16 at 20; Ct. Rec. 20 at 9.)

At step five, the burden shifts to the Commissioner to show

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 14

that there is a significant number of jobs in the national economy that the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984). The ALJ may use the testimony of a vocational expert to identify appropriate jobs. *SSR* 00-4p. The hypothetical posed to the vocational expert must accurately reflect the claimant's physical and mental limitations determined credible and supported by the record. Conversely, the ALJ may exclude restrictions in the hypothetical that she finds unsupported by the record or discredited as unreliable self-report. *Osenbrock v. Apfel*, 240 F.3d 1157, 1162-63 (9th Cir. 2001); *Embrey v. Bowen*, 849 F.2d 418, 423 (9th Cir. 1988); *DeLorme v. Sullivan*, 924 F.2d 841, 850 (9th Cir. 1991).

The hypothetical question presented to vocational expert Deborah LaPoint (VE) by the ALJ included the following **slight** mental limitations in the individual's ability to:

• remember locations and work like procedures;

• understand, remember and carry out short and simple instructions;

• understand and remember detailed instructions;

• carry out detailed instructions;

• maintain attention and concentration for extended periods;

• perform activities within a schedule;

• maintain regular attendance and be punctual;

• sustain an ordinary routine without special supervision;

• make simple work related decision;

• complete a normal work day or workweek,

• perform at a consistent pace;

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 15

- ask simple questions and request assistance;
- maintain socially appropriate behavior;
- adhere to basic standards of neatness and cleanliness;
- respond appropriately to changes in the work setting;
- be aware of normal hazards and take appropriate precautions;
- travel in unfamiliar places or use public transportation; and
- set realistic goals or make plans independently from others.

The hypothetical included the following **moderate** limitations in the individual's ability to:

- work with or near others without being distracted by them, so she should have just minimal interaction with other co-workers;
- interact appropriately with the public, so there should be no more than minimal contact or interaction with the public;
- accept instructions and respond appropriately to criticism from supervisors, so that interaction with supervisors should be minimized; and
- get along with co-workers and peers.

(Tr. 432-34.)  In response to the ALJ's hypothetical, the VE opined the described individual could not do Plaintiff's past relevant work, but could perform other work that existed in significant numbers in the national economy.  (Tr. 434.)

As discussed above, the impairments and the limitations included in the hypothetical and the final RFC were deemed credible by the ALJ and are supported by the record in its entirety.  The ALJ properly rejected the excess symptom testimony and the limitations asserted by Plaintiff's representative.  (*See* Tr. 435)  Further, an ALJ does not have to accept as true the limitations propounded in a

hypothetical by plaintiff's counsel. *Martinez v. Heckler*, 807 F.2d 771 (9th Cir. 1986).   The final determination regarding a claimant's ability to perform basic work is the sole responsibility of the Commissioner.   20 C.F.R. § 416.946; *SSR* 96-5p (RFC assessment is an administrative finding of fact reserved to the Commissioner). Because the hypothetical question presented by the ALJ included all limitations reasonably supported by the evidence, the VE's testimony is substantial evidence.   The Commissioner met his burden at step five.

**CONCLUSION**

The ALJ thoroughly detailed the medical evidence in the record and properly evaluated the medical opinions in considering Plaintiff's impairments.   Her credibility findings are amply supported by clear and convincing reasons and the record in its entirety. The ALJ's determination of non-disability is based on substantial evidence and free of legal error.   Accordingly,

**IT IS ORDERED:**

1.   Plaintiff's Motion for Summary Judgment **(Ct. Rec. 15 )** is **DENIED;**

2.   Defendant's Motion for Summary Judgment **(Ct. Rec. 18)** is **GRANTED;**

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. Judgment shall be entered for Defendant, and the file shall be **CLOSED.**

DATED March 7, 2008.


_____
        S/ CYNTHIA IMBROGNO
UNITED STATES MAGISTRATE JUDGE

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 17